UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Blanca Janneth Nasqui Villa,<br>Luis Miguel Yunga Nasqui,<br>Christopher Joel Yunga Nasqui, and<br>L.A.Y.N., by and through his mother, Blanca<br>Janneth Nasqui Villa<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her Official Capacity,<br>Secretary of the U.S. Department of Homeland<br>Security;<br><br>Pamela Bondi, in her Official Capacity,<br>Attorney General of the United States<br><br>Kenneth Genalo, in his Official Capacity, Field<br>Office Director for ICE's Enforcement and<br>Removal Operations, New York Field Office<br><br>Joseph B. Edlow, Director of U.S. Citizenship<br>and Immigration Services;<br><br>Defendants. | Case No.<br><br><br><br>Judge:<br><br>Magistrate Judge:<br><br>_____<br><br>No request for jury trial<br><br><br><br>**MEMORANDUM OF POINTS AND<br>AUTHORITIESIN SUPPORT OF<br>PETITIONERS' MOTION FOR A<br>TEMPORARY RESTRAINING ORDER<br>AND A PRELIMINARY INJUNCTION**<br><br><br>**ORAL ARGUMENT REQUESTED** |

1

2

# TABLE OF CONTENTS

*FACTUAL BACKGROUND* ............................................................................................ 5

*ARGUMENT*.................................................................................................................. 5

    **I.    Legal Standard** ............................................................................................ 5

    **II.   Plaintiffs Are Entitled to Injunctive Relief**..................................................... 6

        a)    Irreparable Harm in Absence of Injunction..................................................... 7

        b)    Likelihood of Success on the Merits ............................................................ 8

        c)    There is No Substantial Injury to Other Parties and Injunctive Relief is in Public

    Interest........................................................................................................... 11

    **III.  Plaintiffs are Likely to Succeed Because Respondents Enforcement Conduct**

    **Violates the Administrative Procedure Act**............................................................ 12

*CONCLUSION*................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arevalo v. Ashcroft*,
  344 F.3d 1 (1st Cir. 2003) ......................................................................................... 9
*Bridges v. Wixon*,
  326 U.S. 135 (1945) ............................................................................................. 7, 8
*Califano v. Yamasaki*,
  422 U.S. 682 (1979) ................................................................................................. 7
*Chhoeun v. Marin*,
  2018 WL 566821 (C.D. Cal., Jan. 25, 2018) ....................................................... 7, 8
*Demore v. Kim*,
  538 U.S. 510 (2003) ............................................................................................... 10
*Encino Motorcars, LLC v. Navarro*,
  136 S. Ct. 2117 (2016) ............................................................................................. 9
*Mathews v. Diaz*,
  426 U.S. 67 (1976) ................................................................................................... 6
*Matthews*,
  424 U.S. ................................................................................................................... 8
*Moore v. Consol. Edison Co. of N.Y., Inc.*,
  409 F.3d 506 (2d Cir. 2005) .................................................................................... 6
*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................................................... 9
*R.I.L-R v. Johnson*,
  80 F. Supp. 3d (D.D.C. Feb. 20, 2015) .................................................................. 11
*Reid v. Donelan*,
  22 F. Supp. 3d 84 (D. Mass 2014) ......................................................................... 11
*Reno v. Flores*,
  507 U.S. 292 (1993) ............................................................................................... 10
*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) ............................................................................... 11
*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
  102 F.3d 12 (1st Cir. 1996) ..................................................................................... 7
*Thuraissigiam v. U.S. Dep't of Homeland Sec.*,
  917 F.3d 1097 (9th Cir. 2019) ................................................................................. 7
*UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*,
  660 F.3d 643 (2d Cir. 2011) .................................................................................... 6
*United Steelworkers of Am., AFL-CIO v. Textron, Inc.*,
  836 F.2d 6 (1st Cir. 1987) ....................................................................................... 7
*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981) ................................................................................................. 6
*Yick Wo v. Hopkins*,
  118 U.S. 356 (1886) ................................................................................................. 6
*Zadvydas v. Davis*,

4

533 U.S. 678 (2001) ............................................................................................................... 10

Statutes

5 U.S.C. § 706 ........................................................................................................................ 12
5 U.S.C. § 706(2)(A) ............................................................................................................... 9
8 U.S.C. § 1226(c) ................................................................................................................ 10

Rules

Fed. R. Civ. P. 65 .................................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, Plaintiffs, Blanca Janneth Nasqui Villa, Luis Miguel Yunga Nasqui, Christopher Joel Yunga Nasqui, and Luis Adrian Yunga Nasqui ("Plaintiffs"), by and through undersigned counsel, respectfully request this Court to enter an Order preliminarily enjoining the Respondents from removing them from the United States until further order of this Court pending the adjudication of their Complaint for Declaratory and Injunctive Relief. The grounds for this Motion are set forth below and in the Complaint for Declaratory and Injunctive Relief ("Complaint") and exhibits thereto.

Plaintiffs do not seek to relitigate or challenge any final order of removal. Instead, they seek emergency equitable relief to prevent unlawful and ultra vires enforcement action that would irreparably interfere with the congressionally created humanitarian protections currently pending before USCIS.

## FACTUAL BACKGROUND

Plaintiffs Blanca Nasqui Villa and her minor children are long-term residents of the United States. Ms. Villa is a survivor of severe human trafficking who has cooperated with law enforcement and has a pending Application for T Nonimmigrant Status before U.S. Citizenship and Immigration Services ("USCIS"). Her children are derivatives on that application.

## ARGUMENT

### I.     Legal Standard

To obtain preliminary injunctive relief, the lead Plaintiff, Blanca J. Nasqui-Villa, is required to show 1) that she is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of her case or (b) sufficiently serious questions going to the merits to make

5

them a fair ground for litigation and a balance of hardships tipping decidedly in her

favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011).

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v.

Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)  While a Plaintiff seeking a

preliminary injunction has the burden of demonstrating likelihood of success on the merits, they

are not required to prove their case in full at the preliminary injunction stage, but only such

portions that enable them to obtain the injunctive relief that they seek. *See Univ. of Texas v.

Camenisch*, 451 U.S. 390, 395 (1981).

## II.    **Plaintiffs Are Entitled to Injunctive Relief**

Under the Due Process Clause of the Fifth Amendment, the Government may not deprive

any person of liberty without due process of law. Noncitizens present in the United States are

entitled to constitutional protections. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); *Mathews v. Diaz*,

426 U.S. 67 (1976).

Plaintiffs do not challenge the validity of any removal order. Instead, they seek narrowly

tailored emergency relief to prevent Defendants from engaging in ultra vires and arbitrary

enforcement conduct that would irreparably interfere with congressionally mandated

humanitarian protections currently pending before USCIS. Congress created the T

Nonimmigrant Status to protect victims of trafficking and to encourage cooperation with law

6

enforcement. Removal before adjudication of their application would permanently deny relief that federal law expressly provides.

Federal courts retain broad equitable authority to preserve the status quo and protect their jurisdiction while statutory and constitutional claims are adjudicated. *Califano v. Yamasaki*, 422 U.S. 682, 705 (1979). This authority includes the power to issue temporary injunctive relief where necessary to prevent irreparable harm and to ensure meaningful access to judicial review. Courts in this Circuit have consistently exercised this authority in the immigration context where removal would interfere with pending humanitarian or statutory relief. See, e.g., *Calderon v. Sessions*; *You v. Nielsen*.

The equities strongly favor relief. Plaintiffs face immediate and permanent harm if removed before USCIS adjudicates the pending T visa application. By contrast, Defendants will suffer no prejudice from maintaining the status quo for a limited period while this Court considers the merits. The public interest likewise favors protecting victims of trafficking and ensuring the integrity of federal humanitarian programs.

### a) Irreparable Harm in Absence of Injunction

An injury is "irreparable" if it is "not accurately measurable or adequately compensable by money damages." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.* 102 F.3d 12, 19 (1st Cir. 1996); *see also United Steelworkers of Am., AFL-CIO v. Textron, Inc.* 836 F.2d 6, 8 (1st Cir. 1987). *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097 (9th Cir. 2019). Due process cases recognize a broad liberty interest rooted in the fact of deportation, not just the process of removal proceedings. *See Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."); *see also Chhoeun v. Marin*, 2018 WL 566821, at *9 (C.D. Cal., Jan.

25, 2018) (finding a "strong liberty interest" where being deported means being separated from home and family).

Irreparable harm to Plaintiffs in the absence of injunctive relief is readily established in this case. Plaintiff fears targeted violence if returned to her country of origin, where criminal gangs routinely threaten and harm individuals perceived as rivals or former members. Plaintiffs lack a support network in their home country. Removal would likely cause severe psychological distress, including anxiety and trauma-related symptoms, as Plaintiffs face the prospect of returning to a hostile and unsafe environment without access to support or care. As such, Plaintiffs will suffer irreparable harm if they are removed from the United States.

### b) Likelihood of Success on the Merits

Immigrants who pursue lawful immigrant and nonimmigrant status in the United States have rights under the Due Process Clause of the Fifth Amendment.  Once a Plaintiff has identified protected liberty or property interest, the Court must determine whether constitutionally sufficient process has been provided. *Matthews*, 424 U.S. at 335.  In making this determination, the Court balances (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural requirement would entail;" and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Due process cases recognize a broad liberty interest rooted in both the fact of removal and the process of removal proceedings. *See Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."); *see also Chhoeun v. Marin*, 2018 WL 566821, at *9

(C.D. Cal., Jan. 25, 2018) (finding a "strong liberty interest" where being deported means being separated from home and family). Due process protects a noncitizen's liberty interest in the adjudication of discretionary applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). Petitioners have protected due process interests in exhausting the statutory remedies provided by the INA. In the present case, the Plaintiff has a pending Application for T Nonimmigrant Status ("T Visa"). The government's continued arbitrary detention or removal before that hearing would irreparably deprive her of her statutory right to pursue this form of relief. It also violates the statutory scheme governing custody determinations and Plaintiff's due-process right to a meaningful opportunity to be heard.

The Government's actions toward Plaintiffs violates or will violate the APA and the Fifth Amendment.  The APA provides that a court "shall. . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  To satisfy the APA, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In the present case, ICE's imminent custody and removal of the Plaintiffs, despite the pendency of the lead Plaintiff's T Visa constitutes arbitrary and capricious agency action under the Administrative Procedure Act (APA) and violates the Fifth Amendment's Due Process Clause. The agency has failed to provide any rational justification for denying Plaintiff a meaningful opportunity to be heard.

9

"Freedom from imprisonment- from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). This liberty interest applies equally to aliens present within the United States. The Supreme Court has repeatedly recognized that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id* at 693; *see also Reno v. Flores,* 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *Demore v. Kim,* 538 U.S. 510, 523 (2003) (same). As a result, the Supreme Court concluded in *Zadvydas* that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment. 533 U.S. at 690.

Furthermore, in *Demore,* the Supreme Court held that mandatory detention under 8 U.S.C. § 1226(c) was not unconstitutional on its face, but limited its holding to a brief period of detention, stating "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for *the brief period* necessary for their removal proceedings." 538 U.S. at 513 (emphasis added). The Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than ... 90 days." *Id.* at 529.

In the present case, Plaintiffs are at imminent risk of custody and removal despite the lead Plaintiff's pending T Visa. These ongoing proceedings demonstrate that Plaintiff is lawfully pursuing available forms of relief and that his case remains under active adjudication.

10

### c) There is No Substantial Injury to Other Parties and Injunctive Relief is in Public Interest

The issuing of a temporary restraining order and a preliminary injunction is warranted because the balance of equities tips in the favor of the Plaintiffs and the injunction is within the public interest. Congress has expressed a clear public policy in favor of permitting noncitizens with longstanding residence, family ties, and humanitarian equities to pursue available statutory relief before being removed from the United States. Plaintiff's pending T visa favors granting a TRO, which would simply preserve the status quo and uphold the principles of due process that Congress and the courts have long recognized as fundamental to the integrity of our immigration system.

The Petitioner, the public, and the Government all have an "interest in ensuring that all persons, including non-citizens, obtain fair treatment in legal proceedings." *Reid v. Donelan*, 22 F. Supp. 3d 84, 91 (D. Mass 2014). *See also, Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (a government agency "cannot suffer harm from an injunction that merely ends an unlawful practice"); *Devitri*, 2-18 WL 661518, at *7 ("[t]he public's interest in providing due process for non-citizens to ensure that they are not removed to a country where they will be persecuted is an extremely weighted one.") While the government has an interest in enforcing the nation's immigration laws, the government's actions here are in direct contravention of Congress's express intent and the government's own regulations.

The Government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *R.I.L-R v. Johnson*, 80 F. Supp. 3d at 191 (D.D.C. Feb. 20, 2015) (citing *Rodriguez v. Robbins,* 715 F.3d 1127, 1145 (9th Cir. 2013)). Further, "the public interest is served when administrative agencies comply with [the requirements of U.S. law]." *Id.* Approving this temporary restraining order would

ensure that Plaintiffs are afforded his rights under the Due Process clause and the applicable statute and regulations. Denying the order would result in an arbitrary outcome that would be violative of the Plaintiffs' rights and contrary to the interests of justice.

### III.    Plaintiffs are Likely to Succeed Because Respondents Enforcement Conduct Violates the Administrative Procedure Act

The Administrative Procedure Act provides an independent basis for relief. Plaintiffs do not challenge the validity of the underlying removal order. Rather, they challenge Respondents' post-order enforcement conduct, which constitutes final agency action subject to judicial review. *See* 5 U.S.C. § 706.

Respondents' decision to proceed with Plaintiffs' imminent custody and removal despite knowledge of the pending Application for T Nonimmigrant Status is arbitrary, capricious, an abuse of discretion, and not in accordance with law. Congress created the T Nonimmigrant Status framework to encourage victims of human trafficking to remain in the United States, cooperate with law enforcement, and obtain humanitarian protection. Removal before adjudication of a pending T visa frustrates this statutory purpose and undermines federal anti-trafficking enforcement.

Agency action that disregards statutory humanitarian protections and binding internal policy is unlawful. Respondents have failed to follow established deconfliction and coordination procedures governing trafficking victims. Such conduct exceeds statutory authority and constitutes ultra vires action reviewable by this Court.

Courts have repeatedly recognized that immigration enforcement decisions that interfere with statutory humanitarian relief may be reviewed under the APA and enjoined to preserve the integrity of the statutory scheme. See, e.g., *Calderon v. Sessions*, *You Xiu Qing v. Nielsen*.

12

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court enter the proposed Order and preliminarily enjoin the Respondents from deporting Plaintiffs or moving them without providing 5 days-notice pending resolution of the merits of the Petition.

Dated: February 26, 2026

       White Plains, New York

Respectfully submitted,

/s/ Andrea C. Soto

By: _____

Andrea C. Soto, Esq.
Soto Law, PLLC
445 Hamilton Avenue, Suite 407
T : 914-290-4900 / F: 914-898-9100
asoto@andreasotolaw.com

Attorney for Petitioners